E-FILED
Thursday, 25 August, 2016  01:49:29 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DESIGN IDEAS, LTD., an Illinois Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 15-cv-03093** |
| | ) | |
| **MEIJER, INC., a Michigan corporation; WHITMOR, INC., a Delaware corporation; and THE TJX COMPANIES, INC., a Delaware corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

The parties have filed partial motions for summary judgment. Because the undisputed facts show that Defendants infringed on Plaintiff's valid copyright, Plaintiff's Motion for Partial Summary Judgment (d/e 96) is GRANTED. Defendants' Motion for Partial Summary Judgment on Plaintiff's Copyright Claims (d/e 68) and Motion for Summary Judgment (d/e 71) are DENIED.

# I. INTRODUCTION

Plaintiff is an Illinois corporation engaged in the business of creating, manufacturing, and distributing a range of decorative housewares.  Plaintiff originally filed suit in May 2015.  On November 10, 2015, Plaintiff filed a First Amended Complaint against Defendants Meijer, Inc. (Meijer), Whitmor, Inc. (Whitmor), and the TJX Companies, Inc. (TJX).  Meijer is a Michigan corporation with its principal place of business in Grand Rapids, Michigan.  Meijer's website describes the company as a privately-held company that has manufacturing facilities, distribution centers, and 200 stores.

Whitmor is a Delaware corporation with its principal place of business in Southaven, Mississippi.  Whitmor's website indicates that Whitmore is a family-owned business and privately held company that has been "bringing organization home" to consumers around the world.  Whitmore makes products that are sold at numerous stores, such as Amazon, Target, and Wal-Mart.  TJX is a Delaware corporation with its principal place of business in Framingham, Massachusetts.  TJX does business under the names Marshalls, T.J. Maxx, and HomeGoods.

Plaintiff alleges numerous causes of action against Defendants, including copyright infringement under the Copyright Act of 1976, federal unfair competition under the U.S. Trademark Act, violations of the Digital Millennium Copyright Act, common law unfair competition, the Illinois Consumer Fraud and Deceptive Practices Act, and breach of contract.  See First Am. Compl. ¶ 1 (d/e 42).  As is relevant to the pending motions for summary judgment, Plaintiff alleges that Defendants have infringed on Plaintiff's copyrighted product, Sparrow Clips.  A Sparrow Clip is a clothespin with a silhouetted bird design on top.  See Appendix 1 (image of Sparrow Clips).  Plaintiff seeks partial summary judgment on Count I (copyright infringement) that (1) Plaintiff "owns a valid copyright to its SPARROWCLIPS work" and (2) Defendants "infringed that copyright by producing and selling exact copies of [Plaintiff's] protected expression."  Pl. Mot. at 68 (d/e 96).

Defendants seek partial summary judgment on Count I (copyright infringement) and Count IV (violation of the Digital Millennium Copyright Act).  Defendants argue that both Counts I and IV require a valid copyright as a necessary element of those

claims.  According to Defendants, Plaintiff cannot prove the existence of a valid copyright because Sparrow Clips are not sufficiently creative to be copyrightable, and the Sparrow Clips are useful articles not subject to copyright protection.

## II. BACKGROUND

The parties dispute the materiality and/or accuracy of many of the facts in this case.  Taking into account those disputes, the Court sets forth the following factual background.

### 1.  Pititas Waiwiriya created the bird clothespin design and sold the copyright to Plaintiff.

In 2007, Pititas Waiwiriya of Thailand created the bird-clothespin design that is the basis for the Sparrow Clips.  He took inspiration from his memories of playing in his family's garden with birds and from a visit to his mother's house in the country where Mr. Waiwiriya saw birds landing, perching, and taking off from a clothesline.  Mr. Waiwiriya was also influenced by the Danish architect, Arne Jacobsen, and he sought to make a bird-clothespin sculpture that presented a sleek, modern design.

Mr. Waiwiriya used computer-aided design software to create his bird design, first by drawing linear geometric shapes, which he

then rounded and merged into the bird silhouette shape.  He did not copy the two-dimensional outline or three-dimensional shape of his bird design from any source.  Mr. Waiwiriya's intention in creating the bird-clothespin sculpture was to create an art piece and not a product for sale.

Mr. Waiwiriya first displayed the bird-clothespin design at the Living Design Center Ozone exhibition during the 2007 Tokyo Design Week.  The initial design featured a clipping mechanism that was not strong enough to hold anything or stand up straight.  That is, Mr. Waiwiriya intended that the clipping mechanism be used to attach the bird to objects as decoration but not for objects of weight to hang from the clip.  A visitor to the art fair suggested that Mr. Waiwiriya improve the clip so that he could use the design to hang items from the clip and sell it to others for that purpose.  Mr. Waiwiriya subsequently improved the clip's spring so that the "bird pin design" could hold items.  Declaration ¶ 17 (d/e 113).

In 2008, Mr. Waiwiriya exhibited his bird-clothespin design at the Bangkok design fair, where Plaintiff's president, Andy Van Meter, saw the product and expressed his interest in purchasing it.

The parties dispute whether Mr. Waiwiriya sold his bird-clothespin design to Plaintiff in July 2008.

According to Plaintiff, Mr. Waiwiriya executed a Royalty Agreement on July 2, 2008 that transferred to Plaintiff "the entire right, title and interest in and to the Products and worldwide Intellectual Property on such Products." See Mr. Waiwiriya Declaration ¶ 23, Ex. M (copy of an unexecuted Royalty Agreement that Mr. Waiwiriya purportedly received in 2008) (d/e 113).  The Royalty Agreement provided that the term "Products" meant "all products listed on Exhibit A of this Agreement."  Id.

Exhibit A, which specifically indicated that the Exhibit was "part and parcel of the Royalty Agreement," identified the Products as "Sparrow Clip."  Exhibit A provided for an advance to Mr. Waiwiriya of $3,100 and payment of a 4% royalty on sales of his bird-clothespin design exceeding $37,000.  Mr. Waiwiriya also retained the rights to sell the listed item in Thailand and France and the right to display and sell the item in Design Boom, a digital magazine for architecture and design.

However, Plaintiff has been unable to locate a signed copy of the 2008 Royalty Agreement but has located a copy of Exhibit A to

the 2008 Royalty Agreement signed by Plaintiff and Mr. Waiwiriya.

On March 23, 2013, after Plaintiff discovered that it could not

locate a copy of the 2008 Royalty Agreement with Mr. Waiwiriya's

signature, Mr. Waiwiriya signed a Royalty Agreement that Plaintiff

claims ratified the 2008 agreement.  Defendants dispute that the

2013 agreement ratified any 2008 agreement.  As will be discussed

further in the analysis portion of this Opinion, the date Mr.

Waiwiriya transferred the copyright to Plaintiff is important

because a plaintiff cannot bring an infringement action unless he

was the owner of the copyright at the time the infringement

occurred or received an assignment of the right to sue for copyright

infringement that occurred before the transfer of ownership.

The parties do not dispute that Chris Hardy, Plaintiff's design

director, selected the colors for the Sparrow Clips.  Mr. Hardy

looked through different books of color chips from the Pantone

Company, which contains thousands of colors.  Mr. Hardy selected

the green, blue, orange, and red colors used for the Sparrow Clips.

Defendants do not dispute that Hardy did not copy his selection of

colors for the Sparrow Clips from any source, although they

contend the fact is immaterial.   While Plaintiff claims to distribute

Sparrow Clips in sets of the four colors selected by Mr. Hardy,
Defendants dispute this, asserting that the Sparrow Clips are also
sold in black.  In fact, in July 2013, Plaintiff and Mr. Waiwiriya
executed a separate "Exhibit A" for black Sparrow Clips.

Plaintiff began marketing Sparrow Clips in its 2009 catalog
and has featured Sparrow Clips in its catalogs ever since.
Plaintiff's catalogs feature prominent copyright notices indicating
that the product designs contained in the catalogs, and not just
the catalogs themselves, are protected by copyright.  On April 11,
2013, one week after Plaintiff filed for a copyright on the Sparrow
Clips, as discussed in more detail below, Plaintiff filed an
amendment with the Copyright Office pertaining to the 2009
catalog.  Plaintiff stated that Plaintiff "is not claiming as part of the
above-referenced copyright, the 'Sparrow Clips' featured on page
164 of the deposit."  Defs. Opp. Ex. V (d/e 107-21).  The reference
to "deposit" apparently refers to the catalog that was deposited
with the Copyright Office.  See, e.g., Design Ideas, Ltd. v. Yankee
Candle Co., Inc., No. 10-cv-3217,  2011 WL 1827981, at *1 (C.D.
Ill. 2011) (noting that the Spring 2006 catalog was deposited with
the registration filed with the U.S. Copyright Office).

According to Plaintiff, the packaging for Sparrow Clips contains prominent copyright notices indicating that the product design is protected by copyright.  Defendants dispute this, asserting that the packaging contains a single copyright notice on the back side and that there is no indication that the notice applies to the actual Sparrow Clip but instead plainly applies to the text of the packaging.  In that text, Plaintiff advertises Sparrow Clips as "fashionable as well as functional."

## 2. Plaintiff solicited additional designs from Mr. Waiwiriya in 2011.

Defendants claim that the evidence shows that Mr. Waiwiriya did not transfer the copyright to Plaintiff in 2008 and that the bird design is a useful article not subject to copyright.

In February 2011, Plaintiff solicited from Mr. Waiwiriya other designs that might be as successful as the Sparrow Clips.  Mr. Waiwiriya submitted several additional products using the Sparrow Clips bird design, including a drink stirrer, wine stopper (using the bird design as a handle), and party picks, as well as Sparrow Clips with a faux wood grain appearance.   Mr. Waiwiriya's presentation also showed the Sparrow Clips clipped to a clothesline from the

clothespin portion as well as hanging from the beak of the bird design.  In addition, Mr. Waiwiriya sent Plaintiff photos of a paperclip using the same Sparrow design.

Defendants assert—and Plaintiff disputes—that Plaintiff did not assert ownership in any of these Sparrow designs submitted by Mr. Waiwiriya and felt it necessary to license rights to the additional designs.  According to Defendants, such acts are inconsistent with an assignment of the copyright in 2008.  Plaintiff disputes that the additional product designs used the same Sparrow design because the designs differed in size, dimensions, and materials used for the Sparrow Clips.  Plaintiff also claims the facts pertaining to other products are immaterial.

In any event, Plaintiff and Mr. Waiwiriya ultimately negotiated an agreement regarding the Sparrow Wine Stopper, although the nature of the agreement is unclear in the summary judgment record.  Defendants claim the parties negotiated a license, based on the use of that term in emails between Mr. Waiwiriya and Plaintiff's Thailand associate, Kamphol "Be" Srisamutngam.  Plaintiff contends that Mr. Srisamutngam is not an attorney, that the word "license" was translated from Thai, and that he did not

mean the term "license" as legally defined because Plaintiff never licenses designs for goods that it sells.

### 3. The New Clothesline Company identified another use for the Sparrow Clips.

In January 2012, the New Clothesline Company contacted Plaintiff about purchasing Sparrow Clips for resale. Carol Bildahl, the owner of the New Clothesline Company, wanted to use Sparrow Clips for the Company's clothes drying rack. Ms. Bildahl told Plaintiff that "currently we open the back of the bird and snap it onto the rung of our LOFTi, our rack[.]" The New Clothesline Company placed a purchase order for Sparrow Clips.

The packaging for the Sparrow Clips for the New Clothesline Company shows the bird-portion of the clip hanging over a rod. See Appendix 2. Plaintiff contends that the packaging for the Sparrow Clips for the New Clothesline Company was directed by the New Clothesline Company, not Plaintiff. Plaintiff claims it did not change or alter the Sparrow Clips in any way for the New Clothesline Company. Defendants do not dispute that Plaintiff has not changed the shape of the Sparrow Clips since 2008. See Defs. Opp. at 7, ¶ 73 (d/e 107).

**4.    Defendants' purchased the Sparrow Clips and allegedly infringed the Copyright.**

In 2011, Defendants TJX purchased Sparrow Clips from Plaintiff.  In 2012, Defendant Meijer purchased Sparrow Clips from Plaintiff.

In 2012, Meijer stopped purchasing Sparrow Clips from Plaintiff.  Plaintiff asserts—and Defendants dispute—that Defendant Meijer worked with Defendant Whitmor to produce Sparrow Clips knock-offs and that Whitmor sourced the knock-offs from a Chinese manufacturer.  Plaintiff further asserts, and Defendants dispute, that Whitmor sent Sparrow Clips to a Chinese manufacturer, who acknowledged receipt and began preparing copies for Whitmor.   The emails on which Plaintiff relies provide as follows.

In an email dated September 11, 2012, "Maisie" from maisie@homeprod-organizer.com, sent an email to Chris at chris@whitmor.com and a recipient named "james" stating: "We just receive[d] 1 set sparrow clips samples from Whitmor.  We will send you quote ASAP.  Pls confirm if you need samples for review as well."  Pl. Mot., Ex. 14 (d/e 96-14), (d/e 95-6 sealed).  The email

also contained a picture of Plaintiff's Sparrow Clips.  Whitmor's

Chris O'Brien responded by email, stating: "Do you have a source

that has the existing mold?  If so, please inquire with them if the

design is patented.  For now, just send me the price exactly as it is

currently packaged packed in a 12 carton master.  Please advise

MOQ when you quote." Id.  Defendants argue that these emails do

not support Plaintiff's assertions and that the emails are

inadmissible because Plaintiff does not offer any evidence

authenticating them.

Whitmore sold its Canary Clips to Defendants TJX and

Meijer.  Meijer and TJX sold Canary Clips to its customers in 2013

and 2014.  Plaintiff claims, and Defendants dispute, that the

copies sourced by Whitmor and distributed to Meijer are identical

copies.  See Appendix 3 (showing Sparrow Clips and the Canary

Clips distributed to Meijer).  Plaintiff claims, and Defendants

dispute, that the copies sourced by Whitmore and distributed to

TJX are nearly identical copies—that the bird shape and size are

identical and the colors are similar to Plaintiff's colors.  See

Appendix 4 (showing Sparrow Clips and the Canary Clips

distributed to TJX).

**5.    Plaintiff registered the copyright for Sparrow Clips.**

On April 4, 2013, Plaintiff submitted a copyright application to the U.S. Copyright Office for the Sparrow Clips identifying the product as a "sculpture."  Plaintiff included a picture of the Sparrow Clips with the clothespin portion being used to hold a sack lunch closed and to hang socks and papers.  See Appendix 5. The application listed a publication date of December 31, 2008.  . See 17 U.S.C. § 101 (defining "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.").

The effective date of copyright registration is the day on which the application, deposit, and fee (which are later determined to be acceptable) have been received.  17 U.S.C. § 410(d).  Amendments do not affect the earlier date of the initial registration.  Gener-Villar v. Adcom Group, Inc., 560 F. Supp.2d 112, 127 (D. P.R. 2008) (citing 17 U.S.C. § 408(d)).  On May 29, 2013, the Copyright Office

issued a registration certificate No. VA 1-867-185 for the Sparrow Clips.

On August 6, 2015, Plaintiff submitted an amendment to the Sparrow Clips registration because it had erroneously designated the product as a "work for hire."  On August 18, 2015, Plaintiff submitted another amendment to correct the date-of-first publication information included in its 2013 Application to be October 30, 2007.  On August 31, 2015, Plaintiff submitted yet another amendment, this time to claim copyright in Plaintiff's color selection as a contribution of authorship.  See, e.g., 17 U.S.C. § 201(a) ("the authors of a joint work are co-owners of copyright in the work"); 17 U.S.C. § 201(c) ("Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution);; 17 U.S.C. § 101 (defining a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged inseparable or interdependent parts of the unitary whole").

### III. THE PARTIES' MOTIONS

The parties have filed cross-motions for partial summary judgment.  Defendants seek summary judgment on Count I (Copyright Infringement) and Count IV (violation of the Digital Millennium Copyright Act) on the ground that both claims require a valid copyright as an element of the claim.  Defendants contend that Plaintiff cannot prove the existence of a valid copyright because the claimed copyrighted article—the Sparrow Clips—is a useful article and not subject to copyright protection.  Defendants also claim that the Sparrow Clips are not sufficiently creative to be copyrightable.

Plaintiff seeks partial summary judgment only on Count I, copyright infringement.  Plaintiff asserts that the undisputed facts show that the Sparrow Clips are the subject of a valid copyright, Plaintiff is the legal owner of the copyright, and Defendants copied protected expression in the Sparrow Clips work.  In response, Defendants assert that: Plaintiff has not established that it owned the Sparrow Clips copyright when the alleged infringement commenced, Plaintiff committed fraud on the Copyright Office when it registered the copyright, and a genuine issue of material

fact remains whether Sparrow Clips are sufficiently creative to receive copyright protection.  Defendants also claim that the Sparrow Clips are a useful article not subject to copyright protection.

### IV. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party.  Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007).  When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

## V. ANALYSIS

To establish copyright infringement, Plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 360 (1991). "Copying" in this context means infringing any of the exclusive rights of the copyright owner. Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distrib. & Nw. Nexus, Inc., 983 F. Supp. 1167, 1172 n.1 (N.D. Ill. 1997). The copyright owner has the exclusive right to reproduce the work, prepare derivative works, distribute copies of the work to the public, and display the work publicly. Id. (citing 17 U.S.C. § 106(1)-(3) & (5)).

Copyright protection begins when a work protected under the Copyright Act takes a tangible form and vests with the author of the work. 17 U.S.C. § 201(a); JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 914 (7th Cir. 2007) (copyright protection generally begins at the moment of creation of an original work fixed in a tangible medium). Ownership of a copyright may be transferred in whole or in part and any of the exclusive rights of copyright may be transferred. 17 U.S.C. § 201(d). A transfer of ownership, other

than by operation of law, must be in writing and signed by the
owner of the rights conveyed.  17 U.S.C. § 204.  Only the legal or
beneficial owner of the copyright may bring an infringement action.
See 17 U.S.C. § 501(b) (providing that the "legal or beneficial owner
of an exclusive right under a copyright" may bring an infringement
action for "any infringement of that particular right committed
while he or she is the owner of it").

In addition, while a copyright does not need to be registered
with the Copyright Office to be valid, an application for registration
must be filed before a suit for infringement may be filed.  17 U.S.C.
§ 411(a) (providing that subject to certain exceptions, "no civil
action for infringement of the copyright in any United States work
shall be instituted until preregistration or registration of the
copyright claim has been made in accordance with this title"); Chi.
Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 631 (7th Cir. 2003).
The effective date of copyright registration is the day on which the
application, deposit, and fee—which are later determined to be
acceptable by the Register of Copyrights or by a court—have been
received in the Copyright Office.  17 U.S.C. § 410(d).  In this case,
an application for registration was filed on April 4, 2013 and the

certificate of registration was issued May 29, 2013.  Suit was filed on March 19, 2015.  Therefore, Plaintiff complied with this aspect of the registration requirement.

A certificate of registration from the Register of Copyrights made before or within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright and the facts stated in the certificate.  17 U.S.C. § 410(c); Varsity Brands, Inc. v. Star Athletica, LLC, 799 F.3d 468, 479 (6th Cir. 2015) (affording Skidmore as opposed to Chevron deference to a certificate of registration made before or within five years after first publication of the work), cert. granted in part 136 S. Ct. 1823 (2016) (certiorari granted on question of the appropriate test used to determine when a feature of a useful article is protectable under § 101 of the Copyright Act).  When copyright registration is not prima facie evidence of the validity of a copyright, the weight to be given to the certificate of registration is within the discretion of the district court. Id.  The reason for the distinction is that, when there is a long lapse of time between publication and registration, it is less likely that the facts stated in the certificate are reliable.  3 Nimmer on Copyright § 12.11[A][1].

Here, the first publication of the work occurred on October 30, 2007.  Plaintiff filed for copyright registration on April 4, 2013, and the Copyright Office issued a certificate of registration on May 29, 2013.  Because registration was not made before or within five years after first publication of the work, the copyright registration does not constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate.  See Int'l Media Films, Inc. v. Lucas Entm't, Inc., 703 F. Supp. 2d 456, 463 (S.D. N.Y. 2010) ("copyright registration is not prima facie ownership of a valid copyright when registration . . . is made more than five years after the original publication.").  Therefore, this Court can determine how much weight to give the copyright registration.  In light of the Court's discretion, and for purpose of summary judgment, this Court will give little weight to the certificate of registration and will make an independent determination of whether the work is copyrightable.  See, e.g., Whimsicality, Inc. v. Battat, 27 F. Supp. 2d 456, 462 (S.D.N.Y. 1998) (finding that, even where the copyright registration is prima facie evidence that the copyright is valid, the court may still make an independent determination of whether the work is copyrightable).

**A.   The Undisputed Facts Demonstrate Ownership of a Valid Copyright by Plaintiff**

1.   Plaintiff has owned the copyright since 2008.

To bring an infringement action, Plaintiff must have been the owner of the copyright at the time the infringement occurred or have received an assignment of the right to sue for copyright infringement that occurred before ownership was transferred.  See 17 U.S.C. § 501(b) (providing that the "legal or beneficial owner of an exclusive right under a copyright" may bring an infringement action for "any infringement of that particular right committed while he or she is the owner of it"); Pickett v. Prince, 207 F.3d 402, 404 (7th Cir. 2000) (wherein the assignment expressly granted the assignee the right to sue for infringements that occurred prior to the assignment); Oskar Sys., LLC v. Club Speed, Inc., 745 F. Supp. 2d 1155, 1159 (C.D. Cal. 2010) (an assignment of a copyright does not also assign existing causes of actions for infringement unless the assignment specifically provides for the assignment of existing causes of action).  Plaintiff claims the infringement by Defendants occurred at least as early as 2012.  Plaintiff asserts that the undisputed facts show that Plaintiff has owned the Sparrow Clips

copyright since 2008 and that, in any event, Defendants lack standing to challenge Plaintiff's ownership. Defendants argue that genuine issues of material fact remain regarding whether a valid assignment of the copyright occurred before the execution of the 2013 Royalty Agreement. In particular, Defendants note the lack of an executed 2008 Royalty Agreement. In addition, Defendants argue that the conduct between Plaintiff and Mr. Waiwiriya from 2008 to 2013 is inconsistent with a transfer of the copyright to Plaintiff in 2008. Defendants point to Mr. Waiwiriya's submission of additional Sparrow design products to Plaintiff, the execution of an Exhibit A for black Sparrow Clips in 2013, Plaintiff's 2013 disclaimer of a copyright in the Sparrow Clips in its 2009 product catalog, and references to "licenses" when Plaintiff and Mr. Waiwiriya discussed the Sparrow Wine Stopper.

As noted above, ownership of copyrights can be transferred. See 17 U.S.C. § 201(d); Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 591 (7th Cir. 2003). Section 204(a) of the Copyright Act requires that a transfer of ownership be in writing, but also permits an oral assignment to be confirmed later in writing. See 17 U.S.C. § 204 (providing that a transfer, "other than by operation

of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent"); Billy-Bob Teeth, 329 F.3d at 591 (stating that § 204(a) provides that an "oral assignment may be confirmed later in writing"). However, where there is no dispute between the copyright owner and the transferee about the status of the copyright, a third party does not have standing under § 204 to challenge copyright ownership. Id. at 592 (describing § 204 as being "in the nature of a statute of frauds" and that the statute "is designed to resolve disputes among copyright owners and transferees").

In this case, Plaintiff and Mr. Waiwiriya do not dispute that copyright ownership transferred to Plaintiff in 2008. Therefore, under the authority of Billy-Bob Teeth, Defendants lack standing under § 204 to challenge copyright ownership.

Defendants attempt to distinguish Billy-Bob Teeth on the ground that the rule does not apply when the transferor (in this case, Mr. Waiwiriya) has not joined the lawsuit. However, nothing in Billy-Bob Teeth suggests that both the transferor and transferee

were plaintiffs in that case.  <u>See</u> <u>also</u> Civil Docket for <u>Billy-Bob</u> <u>Teeth Inc. v. Novelty Inc.</u>, Southern District of Illinois Case No. 3:99-cv-00963-DRH (listing only Billy-Bob Teeth Inc. as the plaintiff and not listing the transferor, Jonah White, as a plaintiff); <u>see</u> <u>also</u> <u>Software for Moving, Inc. v. La Rosa Del Monte Express,</u> <u>Inc.</u>, No. 07 C 1839, 2007 WL 4365363 at *3 (N.D. Ill. Dec. 7, 2007) (finding the defendants did not have standing to invoke § 204 and argue that the plaintiff could not produce a copy of a written instrument of conveyance or note or memorandum of the transfer because there was no dispute between the copyright owner and the transferee over the status of the copyright; only the transferee was a plaintiff).  And in the case cited by Defendants, <u>Imperial Residential Design, Inc. v. Palms Development Group,</u> <u>Inc.</u>, 70 F. 3d 96, 99 (11th Cir. 1995), the court did not hold that both the transferor and transferee must be joined in the lawsuit. Instead, the court stated: "at least in a case such as this one— where both the original owner and the transferee have joined as plaintiffs in the same lawsuit—we will not let the alleged infringer invoke section 204(a)."  <u>Imperial</u>, 70 F.3d at 99.

Defendants also attempt to distinguish <u>Billy-Bob Teeth</u> by arguing that the rule does not apply when the subsequently executed written document purports to retroactively grant rights that the original agreement never included.  Defs. Opp. at 35 (citing <u>Righthaven LLC v. Democratic Underground, LLC</u>, 791 F. Supp. 2d 968, 975 (D. Nev. 2011)).  Defendants assert that they agree that some transfer of rights occurred in 2008 but that genuine issues of material fact exist whether the 2013 document accurately reflects the 2008 transaction.

In <u>Righthaven</u>, the court found that the plaintiff lacked standing to sue for infringement because the agreement between the plaintiff and the copyright owner did not transfer ownership or any of the exclusive rights defined in § 106 of the Copyright Act to the plaintiff.  <u>Righthaven</u>, 791 F. Supp. 2d at 974.  That court held that a second document executed after suit was filed that attempted to correct the error did not create standing because federal jurisdiction depends on the facts that exist when the complaint is filed—and the plaintiff did not have standing when the complaint was filed.  <u>Id.</u>  The court distinguished <u>Billy-Bob Teeth</u> on the ground that, in that case, the document executed

after initiation of the lawsuit merely confirmed the oral assignment that had occurred prior to initiation of the lawsuit.  Id. (noting that the Righthaven plaintiff was asking the court to "fundamentally rewrite the agreement . . . to grant [the plaintiff] rights that it never actually received").

In contrast here, Plaintiff is not attempting to rewrite the agreement by way of the 2013 Royalty Agreement.  The undisputed facts reflect that Mr. Waiwiriya signed a 2008 Royalty Agreement, a signed copy of which cannot be found.  An unsigned copy of the 2008 Royalty Agreement (pages 1-5, missing only the signature block) is contained in the record, as is the 2008 signed Exhibit A to the Royalty Agreement.  See Mr. Waiwiriya's Declaration ¶ 23, Ex. M.  Because the 2008 Royalty Agreement is in the record, the Court knows what rights Mr. Waiwiriya purported to transfer to Plaintiff in 2008, namely, "the entire right, title and interest in and to the Products and worldwide Intellectual Property on such Products."  Id.  These facts are much different than the facts in Righthaven, wherein the parties' original agreement clearly only transferred the right to bring an infringement suit and not any of the exclusive rights defined in the Copyright Act.  In addition, the

second document—the 2013 Royalty Agreement—was not created after the lawsuit was filed, as was the case in Righthaven.

Moreover, even if Defendants do have standing to challenge copyright ownership under § 204, the Court finds the writing requirement of § 204 satisfied.  Plaintiff has submitted a fully executed copy of Exhibit A to the Royalty Agreement, which specifically references the Royalty Agreement and reflects that the product subject to the Royalty Agreement was the Sparrow Clip. See, e.g., Mid-Town Petroleum v. Dine, 72 Ill. App. 3d 296, 303-04 (1st Dist. 1979) (finding the statute of frauds satisfied where the signed and unsigned writings were connected and contained all of the necessary elements).  Mr. Waiwiriya also avers that he executed a Royalty Agreement in 2008 selling all of his worldwide intellectual property rights to his bird pin design under the terms of the Royalty Agreement.  Declaration ¶ 27 (d/e 113).  Defendants' evidence regarding Plaintiff's and Mr. Waiwiriya's conduct with regard to other products is immaterial to whether Plaintiff obtained the copyright to the Sparrow Clips in 2008.  How the parties chose to proceed with other products has no effect on the validity of the earlier transfer of ownership.  Moreover, Plaintiff's April 11, 2013

disclaimer of a copyright of the Sparrow Clips in the 2009 catalog is also immaterial where Plaintiff had registered the copyright of the Sparrow Clips on April 4, 2013.  In sum, the undisputed facts, even taken in the light most favorable to Defendants, demonstrate that Plaintiff owns the copyright to the Sparrow Clips.

2.   <u>Plaintiff has a valid copyright</u>

Having found no issue of material fact regarding ownership and registration of the copyright, the Court next examines whether issues of fact remain regarding the validity of the copyright.

Plaintiff and Defendants both seek summary judgment on whether the Sparrow Clips are subject to copyright.  This determination is an issue of law for the Court and is appropriate for resolution on summary judgment.  <u>See</u> <u>Janky v. Lake Cnty. Convention & Visitors Bureau</u>, 576 F.3d 356, 363 (7th Cir. 2009) (holding that under Seventh Circuit precedent, "'copyrightability is always an issue of law'") (quoting <u>Gaiman v. McFarlane</u>, 360 F.3d 644, 648 (7th Cir. 2004)).

a.   *The bird design is original.*

Copyright protection subsists in original works of authorship, including pictorial, graphic, and sculptural works.  17 U.S.C.

§ 102(a)(5); <u>Wildlife Express Corp. v. Carol Wright Sales, Inc.</u>, 18 F.3d 502, 507 (7th Cir. 1994) (to be eligible for copyright, a work must be original).  Plaintiff claims copyright only in the separable bird sculpture and the color selection shown in each set of the Sparrow Clips.

Defendants argue that the bird shape is not original because it does not meaningfully vary from stock depictions of bird silhouettes.  According to Defendants, Plaintiff cannot monopolize the limited number of ways to express the general idea or shape of a small bird.

Plaintiff asserts that the bird design meets the minimal requirements for creativity because it is a not a realistic depiction of a bird but rather a fanciful silhouette with a distinctive pose, posture, and overall expression.  Additionally, Plaintiff maintains that it is not seeking to monopolize the idea of bird-topped clothespins but that it only owns the rights to this particular expression of the idea.

"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some

minimal degree of creativity." <u>Feist</u>, 499 U.S. at 345 (also noting that "[t]he requisite level of creativity is extremely low"); <u>Publ'ns Int'l, Ltd. v. Meredith Corp.</u>, 88 F.3d 473, 479 (7th Cir. 1996) (requiring "some minimum indicia of creativity").  Originality does not mean novelty.  <u>Kelley v. Chi. Park Dist.</u>, 635 F.3d 290, 302 (7th Cir. 2011).

Here, the evidence is undisputed that the Sparrow Clips were not copied from any source.  <u>See</u> Plaintiff's Undisputed Fact No. 12 ("Mr. Waiwiriya did not copy the two-dimensional outline or three-dimensional shape of his bird design from any source"); No. 51 ("Chris Hardy did not copy his selection of the SPARROWCLIPS colors from any source") (d/e 96); Defendants' Response to No. 12 and No. 51 asserting only that the facts are immaterial (d/e 107).

Moreover, the Sparrow Clips design portrays a perching bird with a distinct and creative pose, posture, and overall expression. The bird is neither a generic bird design nor a lifelike representation but is an artist's rendering of the impression of a bird.  Therefore, the Sparrow Clips meet the low creativity bar for copyright protection.  <u>See</u>, <u>e.g.</u>, <u>Wildlife Express</u>, 18 F. 3d at 508 (noting other cases in which the Seventh Circuit has held that

original manner of expressing an idea has been expressed in the
"shapes, sizes, colors, sequences, arrangements, and sounds" of a
video game and the pose, posture, and facial expression of a
realistic deer sculpture); Lucky Break Wishbone Corp. v. Sears,
Roebuck & Co., 528 F. Supp. 2d 1106, 1120-21 (W.D. Wa. 2007)
(finding that the creative elements of a plastic breakable turkey
wishbone met the low standard for creativity), aff'd 373 F. App'x
752 (9th Cir. 2010).  In addition, the Court finds that, while color
itself is not subject to copyright protection, "the author's choice in
incorporating color with other elements may be copyrighted."
Boisson v. Banian, Ltd., 273 F.3d 262, 271 (2d Cir. 2001) (finding
the district court committed clear error by finding that the
plaintiff's choice of colors in the quilt were not a protectable
element (i.e. not original) where the court should have considered
the color choice along with the plaintiff's other creative choices);
Games Workshop Ltd. v. Chapterhouse Studios, LLC, No. 10 C
8103, 2012 WL 5949105, at *11 (N.D. Ill. Nov. 27, 2012) (finding
that the plaintiff "could not base its copyright claim on a depiction
of an "X" or a chevron alone, [but] its depiction of an original,
creative shoulder pad with a distinctive color scheme is sufficient

to satisfy the originality requirement"), <u>on</u> <u>reconsideration</u> <u>in</u> <u>part</u>,

2013 WL 1340559 (N.D. Ill. Apr. 1, 2013).

b.     *The Sparrow Clips are a useful article but the bird design is*
       *physically and conceptually separable from the useful*
       *clothespin portion of the work.*

Having found originality, the Court must next determine

whether genuine issues of material fact remain about whether

Sparrow Clips are a useful article not subject to copyright

protection.

Copyright protection subsists in original works of authorship

fixed in any tangible medium, including pictorial, graphic, and

sculptural works.  17 U.S.C. § 102(a)(5); 17 U.S.C. § 101 (defining

pictorial, graphic, and sculptural works to include two- and three-

dimensional works of fine, graphic, and applied art).  Useful

articles, defined as articles that have "an intrinsic utilitarian

function that is not merely to portray the appearance of the article

or to convey information," are not entitled to copyright protection.

<u>See</u> 17 U.S.C. § 101 (defining useful article); <u>Incredible Techs., Inc.</u>

<u>v. Virtual Techs., Inc.</u>, 400 F. 3d 1007, 1012 (7th Cir. 2005) (noting

that "[t]he exclusion of functional features from copyright

protection grows out of the tension between copyright and patent

laws").  However, if a work is a useful article, it can still fall within the definition of "pictorial, graphic, and sculptural work" and be protected by copyright "if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U.S.C. § 101.  Courts have interpreted this language as requiring either physical or conceptual separability between the utilitarian and artistic aspects of the work for the design to be copyrightable. Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 372 F.3d 913, 922 (7th Cir. 2004);  Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 326 (2nd Cir. 2005) (individual design elements of useful articles are entitled to some protection under the Copyright Act if those design elements are physically or conceptually separable from the article itself); see also Compendium of U.S. Copyright Office Practices, Third Edition, § 906.8 ("the decorative ornamentation on a useful article may be registrable if it is separable from the functional aspects of that article").

The Court finds no genuine dispute that the Sparrow Clips are a useful article.  The Sparrow Clips as a whole have the

intrinsic utilitarian function of hanging objects from the clothespin

portion of the design.  In fact, even Plaintiff's packaging for

Sparrow Clips recognizes the functionality of the Sparrow Clips,

describing Sparrow Clips as both "functional" and "fashionable."

See also Plaintiff's Mot. for Partial Summ. J. at 35 (noting that the

clothespin portion is useful).  Therefore, whether the Sparrow Clips

are subject to copyright depends on whether the artistic features

are separate from the utilitarian features.  See, e.g., Bonazoli v.

R.S.V.P. Int'l, Inc., 353 F. Supp. 2d 218, 221, 225 (D.R.I. 2005)

(involving heart and arrow design measuring spoons and finding

no separability, noting that the design was not original to the

plaintiff and was adapted to be a set of measuring spoons).

Plaintiff contends that the undisputed facts show that the

bird design is physically and conceptually separable from the

useful clothespin portion of the work.  Plaintiff also asserts that

the bird design is not itself a useful article.  According to Plaintiff,

secondary, subsequently discovered uses for the bird design do not

make it functional.

Defendants argue that the bird design is not physically

separable from the clothespin portion because removing the bird

portion fundamentally changes the nature of the article, leaving only a clothespin. Defendants further argue that the bird design is not conceptually separable because every aspect of the bird silhouette serves a utilitarian purpose: (1) the bird's tail is flexible and open at one end to allow the body of the bird to be used as a hook; (2) the bird's body is round to encircle a rod; (3) the bird's head is round to envelope a smaller rod; and (4) the bird's beak is pointed such that it can hang from a thin string.

Defendants also argue that the bird design is itself a useful article. Defendants point to additional facts as evidence of the usefulness of the bird portion of the Sparrow Clip: (1) the use of the bird design portion of the Sparrow Clips by the New Clothesline Company to hang a Sparrow Clip from a rod; (2) Plaintiff's use of the same bird shape on other items, like the Sparrow Wine Stopper, which used the bird design as the handle; (3) Mr. Van Meter's admission at his deposition that the hanging functionality of the bird component is useful; and (4) the 2011 presentation by Mr. Waiwiriya showing a Sparrow Clip hanging from a clothesline by the bird's beak.

The Court finds, as a matter of law, that the bird design is both physically and conceptually separable from the utilitarian aspect of the work.  Stanislawski v. Jordan, 337 F.Supp.2d 1103, 1111-12 (E.D. Wis. 2004) ("copyright protection is clearly limited to those aspects of the frames' designs that exist apart from their utilitarian value").  The bird design is physically separable because the bird design can be physically removed and leave the utilitarian function of the clothespin intact.  See, e.g., Wildlife Express, 18 F.3d at 506 (affirming district court; district court found that soft sculpture animal heads and tails attached to duffle bags were separably identifiable from the utilitarian duffle bag); Pivot Point, 372 F.3d at 922 (discussing physical separability and citing Mazer v. Stein, 347 U.S. 201 (1954) for the proposition that a "statuette incorporated into the base of a lamp is copyrightable"); Compendium of U.S. Copyright Practices, Third Edition § 924.2(A) (giving as an example of physical separability a "sufficiently creative decorative hood ornament on an automobile").

The bird design is also conceptually separable.  To be conceptually separable, one must be able to conceptualize the artistic aspects of the article as existing independently of the

utilitarian function of the article.  Pivot Point, 372 F.3d at 931.

The artistic aspects exist independently if "the design elements can

be identified as reflecting the designer's artistic judgment exercised

independently of functional influences."  Id. (quoting Brandir Int'l

Inc. v. Cascade Pacific Lumber Co., 834 F.2d 1142, 1145(2d Cir.

1987)).  If so, conceptual separability exists.  Id.  If, however, a

useful article's design is "as much the result of utilitarian pressure

as aesthetic choices," conceptual separability does not exist.  Id.

(citations and quotations omitted); see also Compendium of U.S.

Copyright Practices, Third Edition § 924.2(B) (giving as an example

of conceptual separability a carving on the back of chair, noting

that "one could imagine the carving . . .as a drawing on a piece of

paper that is entirely distinct from the overall shape of the chair"

and, even if the carving was removed, the shape of the chair would

remain unchanged and the chair would still be capable of serving a

useful purpose) (citing H.R. Rep. No. 94-1476, at 55 (1976),

reprinted in 1976 U.S.C.C.A.N. at 5668-69).

By way of example, in Pivot Point, the Seventh Circuit held

that the particular face on the "Mara mannequin"—portraying the

"hungry look" of a fashion model—was conceptually separable from

the mannequin's use in hair display and make-up training because it was the product of the German artist's artistic judgment.  <u>Pivot Point</u>, 372 F.3d at 931.  There was no evidence that the artist's judgment was constrained by functional considerations—<u>i.e.</u> that the eyes had to be a certain width or the brow had to have a certain arch to facilitate make-up application.  <u>Id.</u> at 931-32.  Moreover, it was not "difficult to imagine a different face than that portrayed on the Mara mannequin," meaning that Mara's specific features were not necessary to "serve the utilitarian function of a hair stand and, if proven, of a makeup model."  <u>Id.</u> at 931.

Similarly here, the only evidence in the record shows that the bird design was a product of Mr. Waiwiriya's artistic judgment and that his judgment was not constrained by functional considerations.  In fact, he originally designed the product as an art piece.  Therefore, the specific artistic choices in creating the bird design—which did not change when Mr. Waiwiriya strengthened the clothespin portion so that the Sparrow Clip could hold things—was not constrained by functional considerations.

Because of that, this case is distinguishable from <u>Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.</u>, 834 F.2d 1142, 1147 (2d

Cir. 1987), which involved bike racks that were derived from wire sculptures. The court noted that if the designer had adopted an existing wire sculpture as a bike rack, the object would not have forfeited its copyrighted status. Id. However, because the designer adapted the original aesthetic elements of the sculpture to accommodate and further a utilitarian purpose—by widening the upper loops to permit parking under and over the rack's curves, straightening the vertical elements to allow for in-and-above ground installation, and using heavy-gauged tubular construction—the rack was a product of industrial design and not subject to copyright protection. Id. (finding form and function inextricably intertwined).

In contrast here, form and function are not inextricably intertwined. Mr. Waiwiriya did not adapt the bird design to further a utilitarian purpose. The bird design is ornamental and separate from the utilitarian function of the clothespin portion of the Sparrow Clip. As such, the design is conceptually separable from the function of the clothespin. See Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir. 1980) (involving decorative and jeweled belt buckles and finding "the primary

ornamental aspect of the [belt] buckles [was] conceptually separable from their subsidiary utilitarian function").

Further, the cases cited by Defendants are also distinguishable.  In Inhale, Inc. v. Starbuzz Tobacco, Inc., 755 F.3d 1038, 1042 (9th Cir. 2014), the court held that the distinctive shape of a hookah water container was not conceptually separable from its function as a container.  Id.  This was because the shape accomplished the function of holding liquid.  Id.; see also Compendium of U.S. Copyright Practices, Third Edition § 924.2(B) ("If the feature is an integral part of the overall shape or contour of the useful article, that feature cannot be considered conceptually separable because removing it would destroy the basic shape of the useful article").

In this case, however, the artistic feature—the bird sculpture—and the useful article—the clothespin—are not one and the same.  The bird shape does not accomplish the purpose of the clothespin holding items—even though the bird design may also be used as a hanger, as addressed further below regarding secondary functions.

Also distinguishable is <u>Carol Barnhart Inc. v. Economy Cover Corp.</u>, 773 F.2d 411, 418-19 (2d Cir. 1985), which held that the artistic features of sculptured torsos—identified as "the life-size configuration of the breasts and the width of the shoulders"—used to display clothes were not conceptually separable from the torso's utilitarian function of displaying clothes because the torso had to have some configuration of the chest and some width of shoulders to serve its utilitarian function. In contrast here, the bird design is not necessary to the clothespin hanging function.

Defendants next argue that the bird design itself is a useful article. Defendants point out that the bird silhouette can hang from a rod (<u>see</u> Appendix 2) or can hang on a string from the beak. However, secondary functions for an item do not affect the copyrightability of the item. <u>See</u> <u>Home Legend, LLC v. Mannington Mills, Inc.</u>, 784 F.3d 1404, 1412 (11th Cir. 2015) (finding the two-dimensional Glazed Maple design on laminate flooring was both physically and conceptually separable from the utilitarian flooring itself and noting that the "secondary function of hiding wear or other imperfections in the product . . . [was] not enough to invalidate the copyright protection for the design); <u>Brandir</u>, 834

F.2d at 1147  (noting that "Brandir argues correctly that a copyrighted work of art does not lose its protected status merely because it is put to a functional use" and noting that if the plaintiff had merely adopted an existing sculpture and used it as a bicycle rack, the object would not forfeit its copyrighted status); Compendium of U.S. Copyright Office Practices, Third Edition § 924.1 ("a sculpture does not become a useful article simply because it could be used as a doorstop or a paperweight"). Therefore, the fact that the Sparrow Clips bird design has a subsequently discovered secondary function that involves direct use of the bird sculpture does not invalidate the copyright protection for the design.

For the same reasons, the Court rejects Defendants' claim that they have presented a submittable case for fraud on the Copyright Office.  Defendants argue that Plaintiff failed to disclose the subsequent, secondary uses of the Sparrow Clip discovered in 2011 (that the bird portion could be used to hang on a rod) when Plaintiff applied for the copyright registration in 2013.

A copyright registration can be invalidated if it was obtained by the submission of knowing misrepresentations of material fact.

17 U.S.C. § 411(b)(1)(A)-(B); <u>DeliverMed Holdings, LLC v. Schaltenbrand</u>, 734 F.3d 616, 622 (7th Cir. 2013).  Before a court invalidates a copyright registration under this provision of the statute, the court must request that "the Register of Copyrights advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2).  However, the Court should employ this mechanism only when necessary, after the party establishes that the application for registration included inaccurate information and that the registrant knowingly included the inaccuracy.  <u>DeliverMed</u>, 734 F.3d at 625.  Because secondary utilitarian functions do not invalidate copyright protection, Plaintiff did not knowingly include inaccurate information on the application.  As such, the Court finds that it need not ask the Register of Copyrights if the additional information would have caused the Register to refuse registration.[1]

---

[1] In addition, the Court could find waiver of the defense.  Defendants raised fraud as an affirmative defense but only alleged that Plaintiff falsely represented that the work was a work made for hire.  <u>See</u> Answers (d/e 101), (d/e 48), (d/e 49); <u>Lennon v. Seaman</u>, 84 F. Supp. 2d 522, 525 (S.D. N.Y. 2000) ("An allegation of fraud on the Copyright Office is typically brought in an infringement action as an affirmative defense to the enforcement of a registered copyright certificate"); 17 U.S.C. § 101 (defining "work made for

**B.    The Undisputed Facts Demonstrate that Defendants Copied the Constituent Elements of the Work that Are Original**

As noted above, the owner of the copyright has the exclusive right to produce the work, prepare derivative works, and distribute copies for sale.  17 U.S.C. § 106.  Anyone who violates the exclusive rights of the copyright owner is an infringer of the copyright.  17 U.S.C. 501(a).  To prove copyright infringement, Plaintiff must prove that Defendants copied the constituent elements of the work that are original.  Nova Design Build, Inc. v. Grace Hotels, LLC, 652 F.3d 814, 817 (7th Cir. 2011).  The undisputed evidence in this case shows Defendants copied the constituent elements of the work that are original.

A plaintiff can prove copying by pointing to direct evidence of copying or by showing that the alleged infringer had access to the copyrighted work and that the alleged infringer's works are substantially similar to the copyrighted work.  See Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries, 272 F.3d 441, 450 (7th Cir. 2001); Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56,

_____

hire" as a work prepared by an employee in the scope of his employment or a work specially ordered or commissioned).  However, Plaintiff does not argue waiver.

61 (1st Cir. 2000) (direct evidence of copying is rare). If a plaintiff shows access and substantial similarity, the defendant can rebut the inference of copying by showing that the allegedly infringing work was independently created. <u>JCW Invs.</u>, 482 F.3d at 915. In this case, Defendants do not argue independent creation or point to any evidence of independent creation. In fact, Defendants do not address this element of Plaintiff's claim at all.

Undisputedly, Defendants Meijer and TJX had access to the Sparrow Clips, as they have admitted that they purchased Sparrow Clips from Plaintiff. <u>See</u> Defs. Opp. at 10-11, Responses to Plaintiff's Undisputed Facts ¶¶ 87, 88 (admitting TJX purchases Sparrow Clips in 2011 and Meijer purchased Sparrow Clips in 2012). As evidence that Whitmor had access to Sparrow Clips, Plaintiff points to the emails between "[Maisie@homeprod-organizer.com](mailto:Maisie@homeprod-organizer.com)" and "[chris@whitmor.com](mailto:chris@whitmor.com)" in which Maisie confirms receipt of the Sparrow Clips sample from Whitmor and indicating that she would send a quote. Chris O'Brien (presumably the Chris associated with the email "chris@whitmor.com) responds by asking if Maisie has a source with the existing mold and asking her to inquire whether the design is patented.

Defendants dispute this evidence, claiming that the emails do not support Plaintiff's assertion. Defendants also claim the email is inadmissible because Plaintiff does not offer any evidence authenticating the email or provide any context surrounding it.

The Court notes that the email string in question is Bates stamped "WHT0000054" through "WHT0000061," which suggests that Whitmor produced the email in discovery. Yet, producing a document in response to a discovery request does not amount to an admission of the document's authenticity. Castro v. DeVry Univ., Inc., 786 F.3d 559, 578-79 (7th Cir. 2015) ("The mere act of producing a document in response to a discovery request based on the content of the document does not amount to an admission of the document's authenticity").

However, even if the Court does not consider the emails, access can be presumed where the "similarity is so close as to be highly unlikely to have been an accident of independent creation." Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1169 (7th Cir. 1997); JCW Invests., 482 F.3d at 916. Therefore, the Court turns to the second requirement for showing copying: whether the two products are substantially similar. Although substantial similarity

Page 47 of 56

is generally a question of fact, summary judgment is proper if a comparison of the two works shows that no objective person would find the works more than minimally distinguishable.  See JCW Invests., 482 F.3d at 916 (affirming district court's grant of summary judgment that the defendant infringed on the plaintiff's copyright, including the finding that the two products were substantially similar, where both items were plush dolls of middle-aged men sitting in armchairs who expel gas and tell jokes and had the same crooked smiles, balding heads with a fringe of back hair, a large protruding nose, blue pants of identical color, and white tank tops; small cosmetic differences were insufficient to distinguish the two products).

When determining whether an allegedly infringing work is substantially similar to copyrighted work, the Court applies the "ordinary observer" test:  "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protective expression by taking material of substance and value." Susan Wakeen Doll Co., 272 F.3d at 451 (citations and quotations

omitted).  The test is an objective one.  <u>JCW Invests.</u>, 482 F.3d at

916.

The Court has examined the photographs of the Sparrow

Clips and the Canary Clips as well as the actual Sparrow Clips and

Canary Clips submitted to the Court.  No reasonable person could

find that the Sparrow Clips and the Canary Clips are not

substantially similar.  In fact, other than color, they are essentially

identical.  <u>See</u>, <u>e.g.</u>, <u>see</u> <u>Stanislawski</u>, 337 F Supp. 2d at 1114

("Where a virtual duplicate is presented to the Court, there is no

need to break down the copyrighted piece to determine what is,

and what is not, protected").

The Canary Clips sold by Meijer are identical in size and

shape and virtually identical in color to the Sparrow Clips, with

only a slight variation in the shade of color in the four clips.  <u>See</u>

Appendix 3.  Two of the four Canary Clips sold by TJX are identical

in size and shape and virtually identical in color to the Sparrow

Clips while the color of the other two is different (gray instead of

red and a darker shade of blue).  <u>See</u> Appendix 4.  Even though the

colors are not identical, "[s]light or trivial variations between works

will not preclude a finding of infringement under the ordinary

observer test." <u>Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600, 608 (2d Cir. 1988).  Moreover, a party cannot escape infringement by merely changing the color.  See <u>Segrets, Inc.</u>, 207 F.3d at 62 (providing that the defendant could not "copy the intricate patterns and juxtapositions of the Blanket Stitch design virtually line-for-line and then escape liability for infringement merely by changing the color and saying this necessarily destroys any substantial similarity").  An ordinary observer viewing the Sparrow Clips and the Canary Clips would conclude that one was derived and copied from the other.

Copyright does not protect ideas but only protects "the author's particularized expression of the idea." <u>Feist</u>, 499 U.S. at 136.  Nonetheless, in this case, the undisputed facts, even viewed in the light most favorable to Defendants, show that Defendants copied Plaintiff's particularized expression of the idea.

Therefore, the Court finds that Plaintiff is entitled to partial summary judgment on Count I that (1) Plaintiff owns a valid copyright to its Sparrow Clips work and (2) Defendants infringed that copyright by copying constituent elements of the work that are original.

# VI. CONCLUSION

For the reasons stated, Plaintiff is entitled to partial summary judgment on Count I that (1) Plaintiff owns a valid copyright to its Sparrow Clips work and (2) Defendants infringed that copyright by copying constituent elements of the work that are original. This Opinion does not resolve Defendants' affirmative defenses, other than the fraud defense addressed herein.

On March 31, 2016, United States Magistrate Judge Jonathan Hawley stayed discovery in this case. Therefore, this matter is referred to Judge Hawley for the entry of an amended scheduling order.

ENTER: August 25, 2016

FOR THE COURT:

        s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE

# APPENDIX 1

# SPARROW CLIPS



**APPENDIX 2**

**SPARROW CLIPS ON THE LOFTi RACK**



## APPENDIX 3

## SPARROW CLIPS COMPARED TO CANARY CLIPS SOLD BY MEIJER



**APPENDIX 4**

**SPARROW CLIPS COMPARED TO CANARY CLIPS SOLD BY TJX**



# APPENDIX 5
# PICTURES OF SPARROW CLIPS SUBMITTED TO THE COPYRIGHT OFFICE



These brightly **colored** clips are **fashionable** as well as **functional**. They can ornament while fastening a bag lunch, **decorate** while hanging your laundry, **celebrate** while showcasing a child's artwork. Remember in the movies how the leading character would simply sing and all the birds would lighten the work load? **Indulge** in the fantasy. Who says a practical object can not also be **fun**?

**Sparrow**Clips. (2-1-08)
**6421001 Sparrow**Clips (assorted)
3.5 x 0.5 x 4.5 in (each clip)
8.9 x 1.3 x 11.4 cm (each clip)
13 x 1.4 x 5.9 in (box of 16)
33 x 3.5 x 15 cm (box of 16)
sg6 boxes mp96 boxes                $7.50 box of 16



www.designideas.net