## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DESIGN IDEAS, LTD., an Illinois Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 15-cv-03093 |
| | ) | |
| **MEIJER, INC., a Michigan Corporation; WHITMOR, INC., a Delaware corporation; and THE TJX COMPANIES, INC., a Delaware corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion for Summary Judgment on All Undecided Claims (d/e 168) filed by Defendants Meijer, Inc. and Whitmor, Inc., and the Motion for Partial Summary Judgment (d/e 189) filed by Plaintiff Design Ideas, Ltd. Because genuine issues of material fact remain, the Motions for Summary Judgment are DENIED.

# I. BACKGROUND

Plaintiff originally filed suit in March 2015 against Defendants Meijer, Inc. (Meijer), Whitmor, Inc. (Whitmor), and The TJX Companies, Inc. (TJX). In November 2015, Plaintiff filed a First Amended Complaint[1] asserting copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., unfair competition under the U.S. Trademark Act, 15 U.S.C. § 1051, et seq. (Lanham Act) and violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, et seq. (DMCA). The First Amended Complaint also contains state law claims asserting unfair competition, violations of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, and breach of contract.[2]

A few weeks before Plaintiff filed this action, Meijer, Whitmor, and TJX filed a lawsuit in the Western District of Michigan seeking a declaratory judgment that they did not violate the Lanham Act, the Copyright Act, or the DMCA. In June 2015, the Court enjoined

---

[1] The First Amended Complaint contains Counts I through IV and Counts VI through X. It does not contain a Count V.

[2] In May 2016, the Court dismissed Counts II and VI relating to the alleged infringement of Plaintiff's DOODLES magnets. Opinion (d/e 99).

the defendants from prosecuting that declaratory judgment action.
Opinion (d/e 12) (Mills, J.).

In August 2016, the Court granted partial summary judgment
on liability in favor of Plaintiff on Plaintiff's copyright claims in
Count I. Opinion (d/e 115). In December 2016, Plaintiff and
Defendant TJX filed a Stipulation of Voluntary Dismissal.

Defendants Meijer and Whitmor (collectively referred to as
Defendants) have now filed a motion for summary judgment on all
remaining claims: Count III, Federal Unfair Competition Under the
Lanham Act; Count IV, violation of the DMCA; Count VII, common
law unfair competition; Count VIII, violation of the Illinois Deceptive
Trade Practices Act; Count IX, violation of the Illinois Consumer
Fraud and Deceptive Business Practices Act; and Count X against
Meijer for breach of the 2007 Settlement Agreement. Defendants
also seek summary judgment that the only recovery to which
Plaintiff is entitled on Count I is Defendants' profits from the sale of
CANARY CLIPS in 2013 until Defendants stopped selling CANARY
CLIPS in August 2014, which total $14,095.64.

Plaintiff seeks summary judgment on Count III, the trademark
claim, and Count IV, the DMCA claim. Although Plaintiff asserts in

its reply that Plaintiff is entitled to summary judgment on Counts VII, VIII, and IX, Plaintiff has forfeited that argument by not raising the claims in its motion for summary judgment and memorandum in support thereof.  See <u>Narducci v. Moore</u>, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

## II. FACTS

Despite the cross-motions for summary judgment, the parties dispute many of the facts in this case.  Moreover, Plaintiff failed to strictly comply with Local Rule 7.1(D)(1)(b) and (2)(b), which require including as exhibits all relevant documentary evidence and providing citations for the documentary evidence that supports each fact or disputed fact.  Plaintiff has, however, supplied much of the missing documentary evidence in its reply.  Therefore, the Court will disregard only those "facts" for which the Court could not find documentary support or which did not contain a citation to the document evidence unless Defendants nonetheless admitted the fact.

Plaintiff is in the business of creating, manufacturing, and distributing decorative gift items and housewares.  One such item is

the SPARROWCLIP, which is a clothespin with a bird design on top. Plaintiff claims to own intellectual property rights in both the SPARROWCLIPS design and the trademark. From February 2009 through May 2016, Plaintiff sold its SPARROWCLIPS to over 750 customers with sales over $615,000.

Between May and August 2012, Meijer placed five orders for SPARROWCLIPS from Plaintiff. At some point, Defendants became interested in manufacturing a bird clip. Meijer admits it purchased retail quantities of SPARROWCLIPS from Plaintiff and that it hired Whitmor to produce the copies.[3] The parties dispute whether Meijer directed Whitmor to directly copy Plaintiff's SPARROWCLIPS.

In September 2012, Whitmor sent a set of Plaintiff's original SPARROWCLIPS that Whitmor purchased from The Container Store to a Chinese manufacturer, Sunny Living. Whitmor asked Sunny Living if it had a mold of the goods and sought pricing. Sunny Living had a mold producing exact duplicates of SPARROWCLIPS. The Sunny Living factory had only used the mold to manufacture bird clips that were

---

[3] Plaintiff's Additional Statement of Undisputed Fact No. 9 (Pl. Opp. at 50, d/e 178) does not cite any evidentiary support, but Defendants admitted it anyway.

shipped to Japan and never shipped bird clips from that mold to the United States.

Sunny Living asked Whitmor what colors Meijer wanted for the copies of the SPARROWCLIPS. Whitmor instructed Sunny Living to copy the colors used in Plaintiff's SPARROWCLIPS sold at The Container Store. Defendants did not inquire whether Plaintiff had authorized that mold or attempt to learn the origin of the Sunny Living mold.

In January and May 2013, Whitmor imported retail quantities of "Canary Plastic Clothespins"—CANARY CLIPS—from China. Whitmor also offered CANARY CLIPS to Target and TJX.

Defendants sold CANARY CLIPS in a plastic bag with a header card. When Meijer and Whitmor sold CANARY CLIPS, Meijer included its tradename, Wholesale Merchandisers, Inc.. and Whitmor included its name, Whitmor, on the packaging. Neither Meijer nor Whitmor provided any identifying information on the CANARY CLIP itself. The information provided by Meijer and Whitmor on the packaging was meant

for and applied to the packaging for the CANARY CLIPS, not the clip itself.

Plaintiff sold SPARROWCLIPS in various types of packaging, including a plastic box and a plastic bag with a header card. Plaintiff's packaging for SPARROWCLIPS contains both the name SPARROWCLIPS and its source, Design Ideas: "SPARROWCLIPS, DESIGN IDEAS © 2008 Design Ideas Ltd." or SPARROWCLIPS, DESIGN IDEAS" and "© 2011 Design Ideas Ltd." The fonts, background designs, and background colors on the header cards used by Defendants and Plaintiff are different.

In addition, Plaintiff's SPARROWCLIPS have imbedded on each individual clip the author's name and Plaintiff's tradename: "p.waiwiriya for design ideas." This information was not imbedded in the CANARY CLIPS.

Defendants contend, and Plaintiff disputes, that Whitmor's Vice President, Scott Felsenthal, reached out to outside counsel to ensure that its own distribution of the clips was appropriate. The parties also dispute that, based on counsel's response, Felsenthal expanded his search to include a search of copyright registration

and that he did not find registrations related to the SPARROWCLIPS design or bird clips or clips. Whitmor never contacted Plaintiff to ask whether SPARROWCLIPS were trademarked or copyrighted.

Defendants stopped selling CANARY CLIPS around August 2014, shortly after receiving Plaintiff's cease and desist letters. Meijer's profits on the sale of CANARY CLIPS did not exceed $4,809.78. Whitmor's profits on the sale of CANARY CLIPS did not exceed $9,285.86.

Plaintiff submitted a copyright application to the U.S. Copyright Office for the SPARROWCLIPS on April 4, 2013. The Copyright Office issued a registration certificate on May 29, 2013.

On February 5, 2016, Plaintiff filed an application to register the mark "SPARROWCLIPS." On September 13, 2016, the United States Patent and Trademark Office (PTO) issued a trademark registration for SPARROWCLIPS.

Plaintiff filed its application for registration under Section 2(f) of the Lanham Act, certifying that the SPARROWCLIPS had acquired distinctiveness based on five years of continuous use in commerce. In the application, Plaintiff stated:

Applicant believes its SPARROWCLIPS mark is inherently distinctive. The bird design on the goods is not of any particular type of bird, and the mark is unitary. Nonetheless, Applicant submits herewith a 2(f) claim for SPARROW, since it has used the mark since 2008, as well as a disclaimer of CLIPS. However, if the Examining Attorney believes either or both are not necessary, applicant requests the Examining Attorney to delete them from the application. Thank you kindly.

The examining attorney reviewing the SPARROWCLIPS application did not delete the Section 2(f) claim from the SPARROWCLIPS application. In the PTO's Trademark Snap Shot Publication Stylesheet, the field titled "Section 2F In Part" is marked "YES." The Registration Certificate states: "SEC. 2(F) As to 'SPARROW.'"

The following facts pertain to Plaintiff's breach of contract claim. In 2007, Plaintiff and Meijer entered into a Settlement Agreement to resolve a controversy between the parties related to another line of Plaintiff's products. Meijer denied in the Agreement that it infringed Plaintiff's products. The Agreement required that Plaintiff purchase merchandise identified in an attachment to the Agreement totaling $250,753 and to purchase additional merchandise totaling $1,000,000 by September 30, 2009. The parties agree that Meijer satisfied all of its purchase obligations under the Agreement.

The Settlement Agreement also required Meijer "not [to] purchase, order, create, manufacture, sell, or distribute any other goods identical or substantially the same as Design Ideas' . . . (iii) containing any Design Ideas intellectual property or [] use any Design Ideas intellectual property, or (iv) use any Design Ideas intellectual property . . . except as provided herein" Agreement ¶ 2(b) (d/e 172-14). Plaintiff alleges that Meijer breached this section of the Agreement with its conduct related to its infringing CANARY CLIPS.

Paragraph 8 of the Agreement provided: "The parties hereby agree to cooperate with each other in furtherance of the purpose, terms[,] and provisions of this Agreement[.]" Agreement ¶ 8 (d/e 172-14). Plaintiff contends that Paragraph 8 requires Meijer to further the purposes of the Agreement and that a major purpose of the Agreement was "ongoing, future sales, which is shown by the express terms [of the Agreement] . . ." Defs. SOF ¶ 145 (d/e 169); Pl. Resp. at 5 (d/e 178).

Plaintiff claims, and Defendants deny, that Meijer threatened Plaintiff with a loss of business should Plaintiff continue to defend its intellectual rights in the SPARROWCLIPS. Plaintiff further

claims, and Defendants deny, that Meijer actualized the threat as shown by the lost sales after Plaintiff refused to drop the instant enforcement and that Meijer instructed Meijer's buyers to cease business with Plaintiff. The parties do agree, however, that, in 2015, after the present lawsuit was filed, Meijer stopped product development efforts with Plaintiff and only agreed to continue purchasing three product programs that were already in place.

## III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party. Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all

reasonable inferences in the nonmoving party's favor.  <u>Blasius v. Angel Auto., Inc.</u>, 839 F.3d 639, 644 (7th Cir. 2016).

In this case, the parties filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Therefore, this Court must view all facts and draw all reasonable inferences in the light most favorable to the Plaintiff when reviewing Defendants' Motion and in the light most favorable to the Defendants when reviewing Plaintiff=s Motion.  <u>See Gazarkiewicz v. Town of Kingsford Heights, Ind.</u>, 359 F.3d 933, 939 (7th Cir. 2004).

## IV. ANALYSIS

### A.    Defendants are Not Entitled to Summary Judgment on Damages in Count I

As noted above, this Court previously found that Defendants infringed on Plaintiff's valid copyright.  Defendants now seek summary judgment on Plaintiff's allowable recovery for copyright infringement.

Pursuant to Section 504(a) of the Copyright Act, an infringer of a copyright is liable for either (1) the copyright owner's actual damages and any additional profit of the infringer or (2) statutory

damages.  17 U.S.C. § 504(a).  Plaintiff does not seek statutory

damages or attorney's fees for copyright infringement under 17

U.S.C. § 504.  Pl. Opp. at 68 (d/e 178); see also 17 U.S.C. § 412(2)

(providing that statutory damages under Section 504 are only

available where the copyrighted work was registered prior to the

commencement of the infringement unless the registration is made

within three months after the first publication of the work).  The Act

provides as follows regarding actual damages and profits:

> The copyright owner is entitled to recover the actual
> damages suffered by him or her as a result of the
> infringement, and any profits of the infringer that are
> attributable to the infringement and are not taken into
> account in computing the actual damages. In
> establishing the infringer's profits, the copyright owner is
> required to present proof only of the infringer's gross
> revenue, and the infringer is required to prove his or her
> deductible expenses and the elements of profit
> attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

Defendants argue that Plaintiff cannot recover actual damages

because Plaintiff has not identified any lost sales and Plaintiff's

theory of actual damages lacks any legal or evidentiary support.

According to Defendants, Plaintiff is only entitled to Defendants'

profits on the sale of CANARY CLIPS, which the parties agree do not exceed $9,285.86 for Whitmor and $4,809.78 for Meijer.[4]

Plaintiff asserts that it seeks the greater of its losses or Defendants' profits. Plaintiff has submitted evidence purporting to show that Meijer threatened Plaintiff with a loss of business if Plaintiff continued to defend its intellectual rights in SPARROWCLIPS and, when Plaintiff refused to stop enforcing its rights, Meijer actualized this threat. Plaintiff argues that had Defendants not filed an anticipatory suit in Michigan, Plaintiff would not have filed this litigation. Plaintiff asserts that it lost two years of profits (approximately $500,000) from selling non-SPARROWCLIPS product to Meijer because of the SPARROWCLIPS infringement.

Actual damages are intended to compensate the copyright owner for the harm suffered by the infringing activity. See On Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d Cir. 2001). The measure of recovery for actual damages suffered by the copyright owner is

_____

[4] Plaintiff's expert also identified as damages profits earned by third parties. Defendants assert that Plaintiff is not entitled to recover from Defendants profits earned by third parties. Def. Mem. at 33 (d/e 171), citing Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 519 (9th Cir. 1985). Plaintiff does not respond to this argument and, therefore, forfeits the issue.

"usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value or the use of the copyrighted material to the infringers." <u>McRoberts Software, Inc. v. Media 100, Inc.</u>, 329 F.3d 557, 566 (7th Cir. 2003). Moreover, because copyright infringement is a statutory tort (<u>Taylor v. Meirick</u>, 712 F.2d 1112, 1117 (7th Cir. 1983)), a party seeking actual damages must show causation. <u>Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.</u>, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

Plaintiff's actual damages theory is unique. Plaintiff seeks as damages all lost profits Plaintiff expected to earn from its relationship with Meijer. Despite the uniqueness of the theory, the Court will allow Plaintiff to pursue it.

The term "actual damages" is broadly construed in favor of the victim of infringement. <u>On Davis</u>, 246 F.3d at 164. In addition, courts have allowed a party to obtain as damages the profits related to the sale of non-infringing goods.

For example, in <u>Bucklaw v. Hawkins, Ash, Baptie & Co., LLP</u>, 329 F.3d 923, 933 (7th Cir. 2003), the Seventh Circuit noted that "the purpose of allowing suit for the infringer's lost profits is to

make infringement worthless to the infringer" and that "[t]his will sometimes require tracing those profits into another product, as where it is bundled with the infringing product".  The <u>Bucklaw</u> court gave as an example a defendant who copies a copyrighted book verbatim and gives the book away for free to anyone who purchases a $25 bookmark that cost the defendant 10 cents to make and had a market value of 50 cents.  <u>Id.</u>  In such case, to hold that the defendant's profits from the infringement would be zero would be to "approve a formula for evading copyright law."  <u>Id.</u> In addition, one court has found that a plaintiff's lost sales on non-infringed works may be recovered as "actual damages" where the non-infringed works were marketed as part of the line of merchandise that included the infringed copyrighted work.  <u>Sunset Lamp Corp. v. Alsy Corp.</u>, 749 F. Supp. 520, 521 (S.D.N.Y. 1990).

Here, the trier of fact could conclude that Plaintiff's actual damages from the infringement include the loss of business with Meijer.  Therefore, Defendant is not entitled to summary judgment on damages.

Defendants also argue that, even if Plaintiff's theory of damages is viable, Plaintiff cannot support the theory with

admissible evidence.  Defendants assert that Plaintiff witness on

damages only identified the lost business with Meijer as a theory of

contract damages while the other Rule 30(b)(6) witness merely

offered speculative and conclusory opinion testimony.  Defendants

further argue that they have filed a motion to exclude Plaintiff's

expert's testimony.  By separate Opinion, entered simultaneously

with this Opinion, the Court has found Plaintiff's expert witness's

testimony is admissible.  Therefore, Defendants are not entitled to

summary judgment on the ground that Plaintiff cannot support its

actual damages theory with admissible evidence.

**B.    Neither Party is Entitled to Summary Judgment on Count III, Trademark Infringement**

In Count III, brought pursuant to 15 U.S.C. § 1125(a) of the

Lanham Act[5], Plaintiff asserts that Defendants' use of the name

"CANARY CLIPS" on Defendants' bird clothespin product infringes

on Plaintiff's rights in in its SPARROWCLIPS trademark.  To

---

[5] Plaintiff filed this lawsuit in March 2015. Registration of the mark was issued in September 2016.  The Amended Complaint, filed in November 2015, alleges a violation of 15 U.S.C. § 1125(a) of the Lanham Act, which applies to unregistered marks.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (noting that Section 1125 protects qualifying unregistered marks). Section 1114(a) protects registered marks.  15 U.S.C. § 1114; see also General Elec. Co. v. Speicher, 877 F.2d 531, 535 (7th Cir. 1989).  The parties appear to agree that the mark is registered.

establish its trademark infringement claim, Plaintiff must prove that (1) the SPARROWCLIPS mark is valid and protectable; and (2) the relevant group of buyers is likely to confuse Defendants' product with Plaintiff's product.  See <u>H-D Michigan, Inc. v. Top Quality Serv., Inc.</u>, 496 F.3d 755, 759 (7th Cir. 2007).

The parties dispute whether the SPARROWCLIPS mark is a valid mark.  Defendants assert the SPARROWCLIPS mark is descriptive while Plaintiff asserts that the mark is suggestive.  The parties also dispute whether Defendants' use of CANARY CLIPS was likely to cause confusion.

The classification of a mark and whether consumers are likely to be confused about the origin of a defendant's products are questions of fact.  See <u>Packman v. Chi. Tribune Co.</u>, 267 F.3d 628, 637 (7th Cir. 2001).  This Court may award summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." <u>Door Sys., Inc. v. Pro-Line Door Sys., Inc.</u>, 83 F.3d 169, 171 (7th Cir. 1996).  The Court finds that summary judgment on these issues is not warranted.

A trademark is a word, name, symbol, or device, or any combination thereof, used by a person to identify and distinguish

his goods from those of others and to indicate the source of those goods.  See 15 U.S.C. § 1127.  To be registered, the "mark must be capable of distinguishing the applicant's goods from those of others."  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (citing 15 U.S.C. § 1052).  Marks are classified as generic, descriptive, suggestive, arbitrary, or fanciful.  Id.  These categories are defined as follows:

> A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species.  A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put.  A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods.  An arbitrary mark applies a common word in an unfamiliar way.  A fanciful mark is not a real word at all, but is invented for its use as a mark.

Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999).

Generic marks are not protected and are not registerable as trademarks.  Two Pesos, 505 U.S. at 768.  Suggestive, arbitrary, and fanciful marks are deemed inherently distinctive and are entitled to protection under the Lanham Act.  Id.

A descriptive mark is not inherently distinctive but can acquire distinctiveness—and be registered—if "'it has become distinctive of the applicant's goods in commerce.'" Id. at 769 (quoting 15 U.S.C. § 1052(e), (f)[6]); see also Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC, 680 F. Supp. 2d 1107, 1116 (N.D. Cal. 2010) (an applicant may register a descriptive mark under section 1052(f), referred to as "Section 2(f)", if the applicant can show at least five years of substantially exclusive and continuous use). "This acquired distinctiveness is generally called 'secondary meaning.'" Two Pesos, 505 U.S. at 769.

Secondary meaning occurs when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 211 (2000) (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)). The factors considered when determining whether secondary meaning

---

[6] Section 1052(f), referred to as Section 2(f) provides: "The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made." 15 U.S.C. § 1052(f).

exists include (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) the amount and manner of advertising; (5) the sales volume; (6) established place in the market; and (7) proof of intentional copying.  <u>Echo Travel, Inc. v. Travel Assocs., Inc.</u>, 870 F.2d 1264, 1267 (7th Cir. 1989) (referring to the first two factors as direct evidence factors and the remaining factors as circumstantial evidence factors); <u>Box Acquisitions, LLC v. Box Packaging Prods., LLC</u>, 32 F.Supp.3d 927, 936 (N.D. Ill. 2014).

This Court must first address any presumption that applies because the SPARROWCLIPS mark is registered.  Registration under the Lanham Act affords the registrant a rebuttable presumption of validity.  15 U.S.C. § 1115(a).  The presumption evaporates, however, if evidence of invalidity is presented.  <u>Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.</u>, 647 F.3d 723, 727 (7th Cir. 2011); <u>Custom Vehicles, Inc. v. Forest River, Inc.</u>, 476 F.3d 481, 486 (7th Cir. 2007) (presumption is "easily rebuttable").

Defendants have not presented such evidence, instead arguing that Plaintiff cannot rely on the presumption because the alleged infringement occurred before the mark was registered.[7]

A plaintiff is afforded one of two presumptions once a mark is registered: (1) that the registered trademark is not merely descriptive or generic; or (2) if descriptive, that the mark is accorded secondary meaning. Packman, 267 F.3d at 639. When the PTO registers a mark without first requiring the applicant to prove secondary meaning, the owner of the mark is entitled to the presumption that the registered trademark is inherently distinctive. Lane Capital, 192 F.3d at 345. When an applicant relies on Section 2(f) during the prosecution of a mark, it is presumed the mark is descriptive. See Cold War Museum, Inc. v. Cold War Air Museum,

---

[7] Defendants also cite Baig v. Coca-Cola Co., 607 F. App'x 557 (7th Cir. 2015) for the proposition that Section 2(f) of the Lanham Act does not apply in suits to establish liability for infringement. This Court finds that Baig does not stand for Defendants' broad proposition. In Baig, the plaintiff attempted to show that his unregistered mark had acquired distinctiveness because he used it for more than five years. Id. at 560. The Seventh Circuit noted that the Section 2(f) allows the PTO to presume a mark has acquired distinctiveness after five years of use, but the presumption applies only to applications to register a mark. Id. In cases of infringement, courts consider several other factors, not just the length and manner of use. Id. Here, Plaintiff is not attempting to apply any presumption under Section 2(f) but seeks to apply the presumptions afforded to registered trademarks.

Inc., 586 F.3d 1352, 1358 (Fed. Cir. 2009); Boden Prods., Inc. v. Doric Foods Corp., 552 F. Supp. 493, 498 (N.D. Ill. 1982) (finding of distinctiveness under Section 2(f) from the PTO creates a presumption that the mark has attained secondary meaning); 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 11.43 (5th ed. 2018) ("The presumption to which a § 2(f) registration is entitled is not that the designation is inherently distinctive, but that it had acquired secondary meaning as of the date of registration").

Here, Plaintiff admitted filing its application for registration under Section 2(f) of the Lanham Act. Def. SOF ¶ 44 at 10 (d/e 169); Pl. Resp. at 5 (d/e 178). Moreover, the registration documents show that Plaintiff submitted evidence of secondary meaning with the request that the examining attorney delete that evidence if the attorney believed it unnecessary. The examining attorney did not delete that evidence. Additionally, the registration certificate reflects registration under Section 2(f). See Registration Certificate (d/e 169-15) (noting "SEC 2(F) As to 'SPARROW'" and that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown: 'CLIPS'").

Consequently, the Court finds that, at most, Plaintiff would be entitled to a presumption that the mark is descriptive and was accorded secondary meaning. Plaintiff is not, however, entitled to such a presumption in this case because the alleged infringement occurred before registration.

When the PTO does "not accept a mark as inherently distinctive" but accepts "proof of acquired secondary meaning under § 2(f), 'the timing of the effectiveness of that presumption is crucial.'" Minn. Specialty Corps., Inc. v. Minn. Wild Hockey Club, LP, No. 00-2317, 2002 WL 1763999, at *5 (D. Minn. July 26, 2002) (quoting Aromatique, Inc. v. Gold Seal, 28 F.3d 863, 870 (8th Cir. 1994)). In cases involving a presumption that a mark acquired secondary meaning, the presumption is effective only as of the date of the registration. Id; Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F.Supp.2d 205, 214 (D. Mass. 2007) (mark entitled to presumption of secondary meaning only as of the date the marks were registered); see also, e.g., Homemakers Home & Health Servs., Inc. v. Chi. Home For the Friendless, 484 F.2d 625, 629 (7th Cir. 1973) (the subsequent acquisition of secondary meaning cannot retroactively establish the registrability of a mark).

Here, because the alleged infringement occurred in 2013 and 2014, and the SPARROWCLIPS mark was not registered until 2016, the presumption does not apply. That is, a finding that a mark acquired distinctiveness in 2016 says nothing about the acquired distinctiveness of the mark in 2013 and 2014 when the alleged infringement occurred.

Without the presumption, Plaintiff has the burden of proving validity. Questions of fact remain whether SPARROWCLIPS is inherently distinctive or has acquired secondary meaning.

Although Plaintiff has not presented evidence of consumer testimony or consumer surveys, "such evidence is not strictly required to establish secondary meaning." <u>Burford v. Accounting Practices Sales, Inc.</u>, 786 F.3d 582, 590 (7th Cir. 2015). Plaintiff has presented evidence of Plaintiff's longstanding use of SPARROWCLIPS as a trademark and hundreds of thousands of dollars in sales. Plaintiff features SPARROWCLIPS in its annual catalogues and at trade shows. Moreover, Plaintiff has presented evidence that, taken in the light most favorable to Plaintiff, suggests intentional copying of Plaintiff's mark. While the evidence may not be particularly strong, secondary meaning is a question of fact and

the Court finds the evidence sufficient to withstand Defendants'

motion for summary judgment.

In addition, neither party is entitled to summary judgment on

the likelihood of confusion element of the trademark claim.  Plaintiff

asserts that the undisputed facts show that Defendants' use of the

CANARY CLIPS mark to sell infringing knock-off products is likely

to cause consumer confusion with Plaintiff's SPARROWCLIPS and

is, therefore, infringing.  Defendants argue that Plaintiff has failed

to create a triable issue of fact.

Likelihood of confusion is a question of fact.  Sorensen v. WD-

40 Co., 792 F.3d 712, 726 (7th Cir. 2015).  The factors considered

include:

> (1) the similarity between the marks in appearance and
> suggestion; (2) the similarity of the products; (3) the area
> and manner of concurrent use; (4) the degree of care
> likely to be exercised by consumers; (5) the strength of
> the plaintiff's mark; (6) any evidence of actual confusion;
> and (7) the intent of the defendant to "palm off" his
> product as that of another.

Id. at 726.  Evidence of actual confusion is not required, although it

is entitled to substantial weight if available.  CAE, Inc. v. Clean Air

Eng'g, Inc., 267 F.3d 660, 685 (7th Cir. 2001).

Plaintiff has presented evidence, taken in the light most favorable to Plaintiff, regarding the similarity of the marks. the similarity of the products, and the area and manner of concurrent use. While the evidence may not be particularly strong, the Court finds the evidence sufficient to warrant sending the issue to the jury.

Lastly, Defendants argue that, even if a triable issue of fact remains on liability, Defendants are entitled to summary judgment because Plaintiff's only allowable recovery on the trademark infringement claims is duplicative of its allowable recovery for copyright infringement—Defendants' profits. However, Plaintiff seeks attorney's fees, and Defendant has not established that Plaintiff cannot satisfy the "exceptional case" standard required to obtain an attorney's fees award. Therefore, the Court will not dismiss Count III on that basis.

**C.     Neither Party is Entitled to Summary Judgment on the DMCA Claims[8]**

In the First Amended Complaint, Plaintiff alleges that Defendants violated Sections 1202(a)(1) and 1202(b)(3) of the DMCA by distributing identical SPARROWCLIPS copies called CANARY CLIPS that falsified the title, owner, and copyright notice. Both parties seek summary judgment on the DMCA claims.

As is relevant here, the DMCA provides that no person shall knowingly provide copyright management information that is false with the intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a)(1). The statute also prohibits distributing copies of work knowing that copyright management information has been removed or altered and "knowing, or with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under [federal copyright law.]" 17 U.S.C. § 1201(b)(3).

The Act defines copyright management information to include eight categories of "information conveyed in connection with copies

---

[8] As Defendants note, courts have disagreed whether the DMCA applies to copyright management information on non-digital media. Def. Mem. at 58 n.8 (citing cases). As Defendants do not raise this ground as a means of defeating Plaintiff's claim, the Court will not address the issue.

* * * of a work, including in digital form . . ." 17 U.S.C. § 1202(c). The categories of information include the title and other information identifying the work; the name of, or other identifying information, about the author of a work; and the name of, and other identifying information about, the copyright owner of the work.  Id.

Plaintiff claims that Defendants violated the DMCA by distributing their CANARY CLIPS, which infringed Plaintiff's SPARROWCLIPS.  Plaintiff asserts that Defendants distributed the CANARY CLIPS without the correct copyright management information—meaning without Plaintiff's copyright management information—and with false copyright management information—meaning with Defendants' copyright management information.

The Court finds that questions of fact preclude summary judgment to either party on the DMCA claims.  Defendants have presented evidence that they found a wholly separate source for their bird clips and distributed them with Defendants' own copyright management information. Plaintiff has presented evidence that Defendants deliberately sought to copy and distribute Plaintiff's bird clip without Plaintiff's copyright management information.  These are issues of fact for the trier of fact to resolve.

See, e.g., Asberg v. Francesca's Collections, Inc., No. 17-cv-115, 2018 WL 1583037, at *8 (S.D.N.Y. March 27, 2018) (on motion to dismiss a DMCA claim, drawing a distinction between using a technological process to replicate the plaintiff's product and packaging without the plaintiff's copyright management information—which may constitute a violation—and creating the products entirely anew based on inspiration from the product samples).

Defendants further argue that Plaintiff's only recovery under the DMCA is duplicative of its copyright claim—Defendants' profits. Defendants assert that Plaintiff cannot recover statutory damages or attorneys' fees under the DMCA because Plaintiff did not register the copyright prior to the alleged violations.

Section 1203(c) of the DMCA provides that a person who commits a violation of Section 1202 is liable either for the actual damages and additional profits of the violator or statutory damages. 17 U.S.C. § 1203(c). Section 1203(b) authorizes a court to award reasonable attorney's fees to the

prevailing party in the court's discretion. 17 U.S.C.

§ 1203(b)(5).

Defendants argue that, because the DMCA is part of Title

17 pertaining to Copyrights, Section 412 of the Copyright Act

applies to bar statutory damages and attorney's fees where the

copyright is not registered at the time of the alleged violation.

Section 412 provides that statutory damages and

attorney's fees as provided by Sections 504 and 505 shall not

be granted if the copyright is not registered at the time of the

alleged infringement:

> In any action under this title, other than an action
> brought for a violation of the rights of the author under
> section 106A(a), an action for infringement of the
> copyright of a work that has been preregistered under
> section 408(f) before the commencement of the
> infringement and that has an effective date of registration
> not later than the earlier of 3 months after the first
> publication of the work or 1 month after the copyright
> owner has learned of the infringement, or an action
> instituted under section 411(c), no award of statutory
> damages or of attorney's fees, as provided by sections
> 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work
> commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first
> publication of the work and before the effective date of its

> registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C.A. § 412; see also 17 U.S.C. § 504 (providing that an infringer of copyright is liable for actual damages and any additional profits or statutory damages); 17 U.S.C. § 505 (providing that, "[i]n any civil action under this title," the court may award reasonable attorney's fees to the prevailing party).

Here, Plaintiff does not seek statutory damages and attorney's fees under Sections 504 and 505 but seeks them under Section 1203. A plain reading of Section 412 demonstrates that the statute applies only to statutory damages and attorney's fees sought under Sections 504 and 505. Section 412 says nothing about registration prior to the infringement as a prerequisite of receiving statutory damages and attorney's fees sought under Section 1203. See, e.g., Glynn v. Cigar Store, Inc., No. 18-cf-00031-MMC, 2018 WL 3145683, at *5 (N.D. Cal. June 27, 2018) (finding, without any discussion of the applicability of Section 412 to the DMCA, that the plaintiff was entitled to statutory damages and attorney's fees for his DMCA claims but not for his copyright infringement claims).

**D.    Defendants are Not Entitled to Summary Judgment on the State Law Claims, Counts VII, VIII, and IX**

Defendants also sought summary judgment on the state law claims in Counts VII, VIII, and IX, which depend on proof of trademark infringement.  Because the Court finds that questions of fact remain whether Defendants infringed on Plaintiff's trademark, Defendants are not entitled to summary judgment on Counts VII, VIII, and IX.

**E.    Meijer is Not Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim**

Meijer seeks summary judgment on Plaintiff's breach of contract claim.  Meijer asserts that Plaintiff's breach of contract claim based solely on the alleged copyright infringement is preempted by the Copyright Act.  Meijer further asserts that the breach of contract claim based on the alleged trademark infringement fails because Plaintiff failed to prove that SPARROWCLIPS is a protectable mark.  Finally, Meijer argues that Plaintiff's breach of contract claim based on Meijer's termination of the parties' business relationship fails as a matter of law.

The Copyright Act preempts actions that are equivalent to copyright infringement claims.  17 U.S.C. § 301.  Breach of contract

claims are usually not preempted.  <u>ProCD, Inc. v. Zeidenberg</u>, 86

F.3d 1447, 1454 (7th Cir. 1996) ("[C]ourts usually read preemption

clauses to leave private contracts unaffected.").  Rights created by

contract are generally not equivalent to any of the exclusive rights

within the general scope of copyright.  <u>See</u> <u>id.</u> at 1455.

In <u>ProCD</u>, the Seventh Circuit cited <u>National Car Rental</u>

<u>System, Inc. v. Computer Associates, Inc.</u>, 991 F.2d 426, 432-33

(8th Cir. 1993) for the proposition that some applications of

contract law could come within the domain of Section 301(a).

<u>ProCD</u>, 86 F.3d  at 1455.  Several district courts within the Seventh

Circuit have held that breach of contract claims are preempted if

the allegations of the breach are based on nothing more than the

act of infringement.  <u>Higher Gear Grp., Inc. v. Rockenbach</u>

<u>Chevrolet Sales, Inc.</u>, 223 F. Supp. 2d 953, 958 (N.D. Ill. 2002)

(citing <u>Nat'l Car Rental</u>, 991 F.2d at 432-33).

Here, however, Plaintiff claims that Meijer breached the

Settlement Agreement provision that prohibited Meijer from using

any of Plaintiff's intellectual property, except as provided by the

Agreement.  Agreement ¶ 2.  This claim is not preempted because it

contains the additional promise that Meijer will only use intellectual

property as provided in the Agreement. Moreover, Plaintiff's claim that Meijer breached the Settlement Agreement by infringing on Plaintiff's trademark remains, as the Court found questions of fact remain whether Plaintiff's trademark is valid.

That leaves Plaintiff's claims that Meijer breached the contract by threatening to stop doing business with Plaintiff if Plaintiff defended its intellectual property rights and by following through on that threat. Plaintiff asserts that Meijer's conduct violated the provision of the Settlement Agreement that required the parties to cooperate in furtherance of the purpose, terms, and provisions of the Agreement. See Agreement ¶ 8. This claim may proceed. A reasonable trier of fact could find that a purpose of the Agreement was to protect Plaintiff's intellectual property and that Meijer, by threatening Plaintiff for defending its intellectual property, breached that provision of the Agreement.

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment on All Undecided Claims (d/e 168) and Plaintiff's Motion for Partial Summary Judgment (d/e 189) are DENIED. This case is set for a Final Pretrial Conference on October 29, 2018 at 3:00 p.m.

in Courtroom I in Springfield before Judge Sue E. Myerscough and for Jury Trial on November 13, 2018 at 9:00 a.m.  Except as stated herein, the parties shall comply with Local Rule 16.1(E) and (F) and the Court's Standing Order on Final Pretrial Conferences, Exhibits, and Jury Instructions.  Motions in limine are due on or before October 1, 2018.  Responses to Motions in limine are due within 14 days of the filing of the motion in limine.  The parties shall file the proposed Final Pretrial Order on or before October 15, 2018.  The parties shall advise the Court, on or before October 15, 2018, whether they will consent to Magistrate Judge Jonathan E. Hawley conducting the jury impanelment.

**ENTERED: July 23, 2018**

**FOR THE COURT:**
                                   **s/Sue E. Myerscough**
                                   **SUE E. MYERSCOUGH**
                                   **UNITED STATES DISTRICT JUDGE**